[No. 423-2.    Division Two.    March 10, 1972.]

JACOB HINKEL et al., *Appellants,* v. WEYERHAEUSER COMPANY *et al., Respondents.*

*Thomas R. Sauriol* (of *Metzler & Sauriol*) and *Dudley N. Perrine,* for appellants.

*Lester T. Parker,* for respondent Weyerhaeuser Company.

*Slade Gorton, Attorney General,* and *W. George Bassett, Assistant,* for respondent State of Washington.

PEARSON, J.—This is an action for personal injuries and damages arising from an automobile accident. Plaintiffs appeal from a judgment following an adverse jury verdict. Aside from an evidentiary ruling, the principal assignments of error relate to the propriety of the jury instructions. We affirm the judgment.

The operative facts stem from a slash burning permit issued by defendant, State of Washington, to defendant, Weyerhaeuser Company. The slash was situated on a 300-

acre tract of land adjacent to Highway 105, between Aberdeen and Westport in Grays Harbor County.

Weyerhaeuser commenced the burn on August 22, 1969. For a time on Sunday, August 24, 1969, the fire was partially out of control because of high winds. Subsequently, the dense smoke from the fire combined with fog, creating a driving hazard on Highway 105. In the early morning hours of August 26, 1969, Weyerhaeuser's employees notified the Washington State Patrol of the hazard, and between 4 a.m. and 5 a.m. a manual traffic control was established just south of the Aberdeen city limits. A state trooper stopped all southbound cars and warned the drivers of the smoke and fog hazard.

On that same morning, the plaintiffs, Jacob Hinkel and his adult daughter Alice Hackler, were passengers in a car driven by Kenneth Hackler, the 17-year-old son of Alice Hackler. They were en route from Port Orchard to Westport for a salmon fishing expedition. The automobile was the family car of the plaintiffs, Alice and Thomas Hackler. As they reached the outskirts of Aberdeen, the car was stopped at the manual traffic control, where they were warned of the driving hazard.

Kenneth testified that he drove at a reduced speed through a patch of smoke or fog near where the warning was given. Then the road was clear for 5 or 6 miles, at which time he increased the driving speed to 50 miles per hour. Later, still during darkness, he again encountered fog, which worsened as he ascended a hill. He reduced the driving speed to 30 or 35 miles per hour, but as he reached the crest of the hill, the car entered a dense cloud of smoke which completely blocked his vision.

At this point, he observed a faint red light and swerved to the left, but nevertheless struck the back of a boat trailer attached to a car that was stopped behind a line of cars which had halted on the highway. Jacob Hinkel and Alice Hackler were injured in the collision.

There was a dispute as to whether or not warning signs had been placed along the highway near the accident scene.

Several witnesses testified they observed warning signs near the time of the accident or afterwards. Others testified that they did not remember seeing any at all.

The plaintiffs first complain. of instruction 13, which stated:

> One driving through fog or smoke must exercise a very high degree of care. The driver of an automobile proceeding through fog or smoke must note all matters which must be considered from the standpoint of the maintenance of due regard for his own safety and that of others. If you find that Kenneth Hackler, the driver of the Hackler vehicle, did not exercise that degree of care and caution in passing through fog or smoke as a careful and prudent person would exercise under such circumstances, then he was guilty of negligence.

█ The contention is that this instruction is comparable to the one condemned in *Ulve v. Raymond,* 51 Wn.2d 241, 317 P.2d 908 (1957). It was there held that an instruction establishing a higher degree of care than the reasonable and prudent standard for operating a vehicle through fog was prejudicially erroneous. That ruling was based upon the correct premise that negligence does not vary in degree, but that under certain circumstances the reasonably prudent actor may be required to exercise a greater amount of care than would ordinarily be the case—driving in fog, for example.

Read as a whole, instruction 13 does not establish a higher *degree* of care, but does require a reasonably prudent driver in fog or smoke to exercise a greater *amount* of caution. The first sentence, which appears introductory, might better be omitted, but in our view, does not establish a higher degree of care. To this extent, instruction 13 is similar to an instruction approved by the Supreme Court in *Ewer v. Johnson,* 44 Wn.2d 746, 270 P.2d 813 (1954) rather than to the instruction held to be improper in *Ulve v. Raymond, supra.* The two instructions are set forth in the margin for comparison.[1]

[1] In *Ulve* the court stated that *Ewer v. Johnson,* 44 Wn.2d 746, 270 P.2d 813 (1954), was correctly decided, but the instruction being

Plaintiff Hinkel complains that instruction 16 was improper as to him. That instruction stated: "If you find that Kenneth Hackler was adequately warned of the condition existing at the place of the accident, you shall find in favor of the defendant."

This instruction, he contends, wrongfully implied that any negligence of his driver, Kenneth Hackler, would be imputed to him.

· ██ While we do not approve formula instructions couched in the "if you find" terminology, we do not con-

considered went beyond that approved in *Ewer* and established an erroneous standard.

*Improper Ulve instruction*:

"You are instructed that fog is one of the most dangerous conditions that beset the driver of a motor vehicle. One driving through fog must exercise a very high degree of care. Fog is not a latent or concealed danger. It gives ample notice of its presence. The driver of an automobile proceeding through fog must note all matters which must be considered from the standpoint of the maintenance of due regard for his own safety and that of others. If you find from a fair preponderance of the evidence in this case that the deceased, Gearold B. Ulve, was driving his automobile at the time of the accident, when the visibility was impaired by fog conditions, then it was his duty to exercise a very high degree of care for his own safety. And if you find from a fair preponderance of the evidence that he failed to exercise such high degree of care and that such failure was the proximate cause of his death, then the plaintiff herein cannot recover and your verdict must be for the defendant."
(Italics omitted.) *Ulve v. Raymond,* 51 Wn.2d 241, 317 P.2d 908 (1957), at 245.

*Approved Ewer instruction*:

"One driving into a dust cloud must exercise a very high degree of care. Dust is not a latent or concealed danger; it gives ample notice of its presence. The driver of an automobile proceeding through dust must note all matters which must be considered from the standpoint of the maintenance of due regard for his own safety and that of others.

"If you find from the evidence that the vision of the various drivers was obstructed by a cloud of dust at the time and place in question, and you further find that such driver or drivers did not exercise that degree of care and caution in passing through said cloud of dust as a careful and prudent person would exercise under such circumstances, then such driver or drivers was or were guilty of negligence."
*Ewer v. Johnson, supra* at 756.

sider the instruction prejudicially erroneous. This instruction pertained to defendant's duty, not Hackler's duty. The theory of all the plaintiffs was that Weyerhaeuser and the state had failed in their duty to give adequate warning of the smoke-fog hazard. In this regard, the defendants owed the same duty to Hinkel that they owed to the other plaintiffs. If the duty were satisfied, there was no negligence as to any of the plaintiffs. *See Meabon v. State,* 1 Wn. App. 824, 463 P.2d 789 (1970). Considering this instruction with the others given, we are unable to say that the jury was misled. *Hayden v. Insurance Co. of North America,* 5 Wn. App. 710, 490 P.2d 454 (1971).

Plaintiffs next contend that seven instructions were concerned with the duty of care owed by the plaintiff, Kenneth Hackler, while only one was given with reference to the duty of each of the two defendants. This overemphasis, it is contended, denied plaintiffs a fair trial.

■ The trial court has broad discretion to determine how many instructions are necessary to fairly present each litigant's theories of the case. *Anderson v. Red & White Constr. Co.,* 4 Wn. App. 534, 483 P.2d 124 (1971); *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964). Where the instructions so repetitiously cover a point of law as to generate a gross overweighting in favor of one party, then the other party has been denied a fair trial. *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969).

We do not view the instructions in this case to be so grossly repetitive and overlapping as to meet the rule of *Samuelson v. Freeman, supra.*

No exception was taken to one of the seven instructions given on defendants' theories, and we refuse to consider it. Instruction 6 is the standard pattern instruction on contributory negligence and was proper and necessary. Two of the instructions involved the statute dealing with speed and both were necessary to present defendants' theory that Hackler was driving faster than the circumstances warranted. Instruction 16, which has already been discussed, deals with defendant's, rather than plaintiff's duty.

Instruction 11, set forth in the margin,[2] and instruction 13, previously discussed, overlap to a degree and one of them could have been omitted without jeopardizing defendant's ability to argue its theories. We do not consider this repetition to be of the gross nature as described in *Samuelson v. Freeman, supra.*

Two assignments of error relate to the refusal of the trial court to give instructions proposed by plaintiffs. Plaintiff Hinkel requested an instruction that Hackler's negligence, if any, would not be imputed to him. By instruction 12, the jury was told that under the family car doctrine, the negligence of Kenneth Hackler would be imputed to his mother and father, Alice and Thomas Hackler. The proposed instruction was unnecessary.

Plaintiffs both urge that they were entitled to an instruction on the sudden emergency doctrine. *See* WPI 12.02, 6 Wash. Prac. 82,[3] and *Leach v. Weiss,* 2 Wn. App. 437, 467 P.2d 894 (1970).

■ The present case was not a proper one for application of the doctrine of sudden emergency, for two reasons. First, the doctrine applies to the choice a party makes *after* he is confronted with sudden peril through no fault of his own. *Sandberg v. Spoelstra,* 46 Wn.2d 776, 285 P.2d 564 (1955). It was not contended that Hackler's decision to swerve to the left to avoid the obstacle was a negligent choice. Rather, it was claimed that he was negligent in not heeding the warnings he had been given and in driving too fast for the known hazardous conditions—both of which occurred before the car entered the dense cloud.

---

[2]"You are instructed that a person driving a car upon a highway is charged with the duty to exercise ordinary and reasonable care for his own safety, and is obligated to use his faculties to avoid danger or dangerous situations of which he has become aware or in the exercise of ordinary care ought to have become aware."

[3]"A person, who is suddenly confronted by an emergency through no negligence of his own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though he does not make the wisest choice."

Secondly, the occurrence of the emergency must be of a sudden nature. *Mills v. Park,* 67 Wn.2d 717, 409 P.2d 646 (1966). By his testimony, Hackler observed the smoke and fog and it became more dense as he proceeded through it. He had been warned by the state trooper that he could reasonably expect the driving condition which he encountered. Given these factors, the "emergency" was neither unexpected nor sudden. It was not error to refuse the proposed instruction.

We turn now to the evidentiary ruling assigned as error. A similar accident had occurred near the scene of this accident about 3 hours earlier, involving vehicles proceeding toward Aberdeen—in a direction opposite to that of plaintiff's vehicle. The trial court refused to admit evidence of that occurrence.

■ Due to the prejudicial effect such testimony has, it is usually not admissible as proof of negligence. *Turner v. Tacoma,* 72 Wn.2d 1029, 435 P.2d 927 (1967). This type of testimony interjects numerous collateral issues into the trial—issues related to the prior accident and irrelevant to the case at hand. For this reason the admission of such testimony is largely discretionary.

However, proof of prior accidents occurring under the same or similar circumstances is admissible to show the existence of a dangerous condition and knowledge of the condition by the one charged with the responsibility for the subject involved. *Porter v. Chicago, M., St. P. & Pac. R.R.,* 41 Wn.2d 836, 252 P.2d 306 (1953).

In this case, the hazard was open and apparent and both defendants exhibited knowledge of its hazardous character. Weyerhaeuser acknowledged warning the Washington State Patrol and the latter undertook to personally warn each motorist. Unless the existence of the hazard or knowledge of its existence is in issue, there is no reason for the collateral issues of prior accidents to be interjected into the case. *See Tonning v. Northern Pac. Ry.,* 180 Wash. 374, 39 P.2d 1002 (1935).

There is also an indication in *Porter v. Chicago, M., St. P.*

*& Pac. R.R., supra* that proof of prior accidents may be relevant and admissible to show the inadequacy of the warnings exhibited at the scene of a hazardous place. However, plaintiff's offer of proof did not show that the conditions of smoke and fog 3 hours earlier were similar to those existing at the time of the accident. Neither did plaintiffs offer to prove that the drivers in the prior accident had received a similar warning of the type they had received. Accordingly, the offer was correctly rejected. *See Porter v. Chicago, M., St. P. & Pac. R.R., supra* at 842.

Lastly, plaintiffs sought a new trial, claiming to have discovered new evidence since the trial. In support of the post-trial motion, affidavits of other drivers were submitted. These drivers had traveled Highway 105 around the time of the accident and did not see warning signs in the locale.

Such a motion rests largely in the discretion of the trial court. *Davenport v. Taylor*, 50 Wn.2d 370, 311 P.2d 990 (1957). Denial of the motion does not constitute an abuse of discretion unless all of the following requirements clearly are present: (1) the new evidence will probably change the result; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of diligence; (4) it is material to the issue; and (5) it is not merely cumulative or impeaching. *Praytor v. King County*, 69 Wn.2d 637, 419 P.2d 797 (1966).

Requirements (3) and (5) are somewhat in doubt in this case, and we are unable to find an abuse of discretion.

Affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.